ISIDORO ÁLVAREZ, Appellant, v. THE REGISTRAR OF
PROPERTY OF CAGUAS, Respondent.

No. 1300.    Submitted October 1, 1953.—Decided October 28, 1953.

*Edelmiro Martínez Rivera* and *Edelmiro Martínez, Jr.*, for appellant.    The respondent Registrar did not appear.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The property involved in this administrative appeal is located in the city of Caguas and has already been the object of several litigations, which have been submitted for decision to this Court. *Jiménez* v. *Registrar*, 62 P.R.R. 335; *Jiménez* v. *Álvarez*, 69 P.R.R. 299; *Álvarez* v. *Jiménez and Miranda*, case number 10395, of this Court, per curiam opinion of January 8, 1952. The brief history of this estate, so prolific in litigation and registration controversies, is as follows, as appears from the records of the Registry of Property of Caguas and from the opinion of this Court in *Jiménez* v. *Álvarez*, 69 P.R.R. 299, from which we copy at length from page 301 *et seq.*:

"In 1904 Modesto Solá recorded the house in his favor by virtue of a possessory title proceeding which in that year he instituted in the Municipal Court of Caguas. In the petition he alleged and at the trial he testified, together with his witnesses, that he had built a house on a lot belonging to the Municipality of Caguas, whose usufruct had been granted to him by the municipality in 1898. The Mayor was notified of this proceeding as legal representative of the municipality [2] and he made no objection.

"Modesto Solá sold the house to Ildefonso Solá Caballero and at the death of the latter's wife it was adjudicated to him as his share in the community property. By deed of December 10, 1923 Ildefonso Solá Caballero sold it to Ramón Díaz Reyes, who, with the consent of his wife, mortgaged it on that same day in favor of Bartolomé Esteva. The mortgage was foreclosed and the house was adjudicated to Esteva by a deed of sale of July 7, 1936. On the 30th of that month it was recorded in his favor.

"On September 2, 1936 Díaz Reyes claimed the homestead right which he alleged he had in the house and entered a notice of lis pendens in the registry of property. While this suit was pending, Bartolomé Esteva sold the house to Isidoro Álvarez and his wife, who are the present owners, by deed of December 1, 1936 and on the following day it was recorded in their favor. Lastly, by deed of January 2, 1937 Ramón Díaz Reyes and his wife settled the homestead suit with Isidoro Álvarez. As a result of this settlement Díaz Reyes received from Isidoro Álvarez the amount of $500 in payment of his homestead. It was further agreed that he would continue to live the mirador until March 31, 1937 without paying any rental whatsoever and that upon vacating the mirador Álvarez would pay him $50 in addition to the aforesaid $500.

"We shall go back in the statement of the facts, in order to consider the vicissitudes which irrespective of the house, were experienced by the lot. After the house was mortgaged to Esteva but while Díaz Reyes was owner thereof, the latter, on May 27, 1935 bought the lot from the Municipality of Caguas for the price of $1.00. Notwithstanding his having purchased the lot, he concealed the fact to the point that when he was dispossessed of the house, he claimed the right of homestead, but took no steps in connection with the lot. Five years after he received the homestead money, he presented the deed of sale of the lot

to the registry of property. Record was denied and he did not appeal from the Registrar's decision. Subsequently he sold the lot to Santos Jiménez Solá on March 19, 1943. On this same day the latter presented his title in the registry of property and record was denied on the ground that the lot had not been previously recorded in favor of the vendor. In order to expedite the inscription of his title, Jiménez Solá presented the deed of sale executed by the municipality in favor of Díaz Reyes. Record was again denied, among other grounds, because it appeared from the registry, according to the Registrar, that when Díaz Reyes purchased the house on December 10, 1923, he also acquired what the registrar called 'right inherent' to the lot; that when he mortgaged the house to Esteva the mortgage was made extensive to the rights he had acquired on the lot, pursuant to the third paragraph of § 107 of the Mortgage Law; that when the mortgaged property was adjudicated to Esteva in payment of his mortgage, the latter acquired all the rights that Díaz Reyes had on the mortgaged property, and finally, because when the deed in favor of Jiménez Solá was presented in the registry, the house, as well as the rights on the lot appeared recorded in favor of Isidoro Álvarez. Jiménez Solá then appealed to this Court. The decision of the Registrar was reversed and the registration of the title of the lot was ordered in favor of Díaz Reyes on July 14, 1943. *Jiménez v. Registrar,* 62 P.R.R. 335.

"After the administrative appeal was decided, the Registrar, on July 29, 1943, at the request of Isidoro Álvarez entered a marginal note to the first inscription converting into one of ownership the record of possession of the house. Said note also stated that Álvarez had acquired the usufruct of the lot by the lapse of twenty years since the first entry of the property without the prescription having been interrupted.

"The Registrar was notified of the decision rendered by this Court in the administrative appeal, but failed to comply with the terms thereof, and instead on August 3, 1943 he recorded, under the eleventh entry, the naked ownership of the lot in favor of Díaz Reyes and on that same day he recorded it in favor of Jiménez Solá under the twelfth entry.

"'Jiménez Solá appealed to this Court for the second time. His administrative appeal was dismissed on November 4, 1943 for lack of jurisdiction. The lack of jurisdiction consisted in that the appeal did not seek a review of the refusal by reason of an incurable defect or of a record made with a curable defect. What appellant prayed for was that a certain record be annulled

and a new one made which might affect the rights of other persons. *Jiménez* v. *Registrar*, 62 P.R.R. 522.

"As a result of this decision, on June 27, 1944, Jiménez Solá filed a complaint in the District Court of Caguas against the Registrar seeking a declaratory judgment to determine whether said officer was right in recording the naked ownership and not the perfect ownership of the lot in favor of the plaintiff. On June 12, 1945 he amended the complaint joining Isidoro Álvarez as party defendant, but later abandoned the suit because on July 6, 1945 the registrar, at the request of Jiménez Solá, cancelled by way of marginal notes the 11th and 12th entries of the naked ownership and on that same day made the 13th and 14th entries. Under the 13th entry he recorded the ownership of the lot in favor of Díaz Reyes. By the other, in favor of Jiménez Solá, his successor in title. As a ground for entering said cancellations he stated that he had committed material and substantial errors in entering the 11th and 12th inscriptions.

"Having thus prevailed over the registrar and armed with the 14th entry which declared him owner of the lot in fee simple, Jiménez Solá demanded of Isidoro Álvarez, on July 19, 1945, to sell him the house. Álvarez refused. Jiménez Solá then instituted this action which was decided against defendant."

As we have seen the problem is twofold, one as to the house and the other regarding the lot. Undoubtedly Ramón Díaz Reyes and his wife lawfully gave up all their rights as to the house. But the present administrative appeal is confined to the lot. In the last case cited of *Jiménez* v. *Álvarez* it was held that the owner of the house, Isidoro Álvarez, was also the owner of the usufruct of the lot and that Ramón Díaz Reyes and his wife had only the naked ownership of the lot, and that, therefore, Jiménez Solá, who had bought Díaz Reyes' lot was only entitled to the naked ownership, equal to that of the vendors. In the same case of *Jiménez* v. *Álvarez* this Court held that therefore the 13th and 14th entries by virtue of which the ownership of the lot in fee simple in favor of Díaz Reyes (entry No. 13) and of his purchaser Jiménez Solá (entry No. 14) had been recorded, were null and void. This Court stated the following at p. 309 of Vol. 69:

"In view of the conclusion we have reached with respect to the 13th and 14th entries it would seem plausible that following the spirit of liberality contemplated by the new Rules of Procedure, we should order the cancellation of said entries. But §§ 88 to 90 of the Mortgage Law Regulations establish the special proceeding which should be followed in order that a court or a judge may order the cancellation of entry or records."

It further states that in that declaratory judgment suit the registrar was not notified pursuant to §§ 88 to 90 that a petition for the annulment of those entries had been filed since no marginal note was entered in the registry with regard to such petition and that, therefore, this Court could not order the cancellation of the 13th and 14th entries.

In consonance with the views of this Court, Isidoro Álvarez then filed in the former District Court of Caguas a complaint against Santos Jiménez Solá and Armando A. Miranda requesting the cancellation of the 12th, 13th and 14th entries of the lot, which appeared recorded in favor of Ramón Díaz Reyes and Jiménez Solá respectively. This time the provisions of §§ 88 to 90 of the Mortgage Law Regulation were complied with. Armando A. Miranda was joined as defendant on the ground that the latter had constituted and recorded in his name (15th entry) a mortgage on the same lot, not being a third party. The former District Court of Caguas finally sustained the complaint against Jiménez Solá and ordered the cancellation of the 12th, 13th, and 14th entries, indicating that it did so pursuant to the holding in *Jiménez* v. *Alvarez, supra,* where, as we have seen, this Court had suggested that those entries ought to be cancelled. The Court of Caguas dismissed the complaint as to Armando A. Miranda holding that the latter was a third party. The judgment of the Court of Caguas was affirmed by this Court on January 8, 1952 by a per curiam decision in case number 10,395. When the latter judgment became final the Court of Caguas issued an order directing the Registrar of Property of Caguas to cancel the 12th, 13th, and

14th entries, and attached to the order a certified copy of the judgment and of the Findings of Fact and Conclusions of Law of the Court. The Registrar cancelled the 14th entry, which appeared in favor of Jiménez Solá, but entered a note refusing to cancel the 13th entry, which appeared in favor of Ramón Díaz Reyes and his wife, "because they had not been made parties to the suit." Isidoro Álvarez has taken the present administrative appeal and has challenged the decision of the Registrar refusing to cancel the 13th entry.

◼ In effect, Mr. and Mrs. Díaz Reyes, record owners of the 13th entry were not defendants in the action for the cancellation of the 12th, 13th, and 14th entries and they were not heard or defeated in court. A registrar may refuse to obey a judicial order of cancellation of entries if there are authentic and legitimate obstacles precluding registration, specifically those brought about by successive performances as, for example, where the record owners who are affected by the cancellation have not been parties to the suit, and the titles of such owners, who have not been heard and defeated in court, validly exist in the Registry. Roca Sastre, *Derecho Hipotecario*, Vol. 2, p. 340; Morell, *Legislación Hipotecaria*, Vol. 3, p. 475, 478, 479, 481, 482; *cf. Pérez* v. *Registrar*, 50 P.R.R. 278. One aspect of this postulate is the rule that a dominion title order is not recordable when there is a prior conflicting record in favor of a person who although summoned, has not consented to the cancellation nor been defeated in a plenary suit. *Bermúdez* v. *Registrar*, 74 P.R.R. 141; *Benítez* v. *Registrar*, 71 P.R.R. 526; *Mercado* v. *Registrar*, 68 P.R.R. 129; *Rodríguez* v. *Registrar*, 65 P.R.R. 614.

However, it appears from the very Registry that Díaz Reyes and his wife had already conveyed and alienated all their rights to Jiménez Solá, the conveyance being recorded in the 14th entry. The record of the conveyance of the property rights on the lot necessarily implied the cancellation

of the entry in favor of the Díaz Reyes spouses, that is, the registration of the 14th entry produced the extinction of the 13th entry. Article 77 of the Mortgage Law provides as follows:

"Art. 77.—Records are not extinguished as to third persons except by their cancellation or by a record of the conveyance of the ownership or property right recorded to another person."

The record of the conveyance of the property rights on the lot in favor of Jiménez Solá cancelled the record in favor of the Díaz Reyes spouses, that is, the 13th entry lost its entire juridical effect as well as its validity and existence in the registry. *Roca Sastre, op. cit.,* Vol. 3, p. 321; Morell, *op. cit.,* Vol. 3, p. 368. As it is stated in *Lecciones de Derecho Hipotecario,* Vol. 1, p. 306, written by Luis Muñoz Morales, "The extinction means the disappearance, invalidation or cessation of existence of a thing, and in the case of records or entries it is produced by a conveyance or a cancellation . . . record of a transfer made in the name of the person acquiring the property extinguishes and automatically cancels the previous record in favor of the transferor: one is extinguished to give life to the other, since the coexistence of two conflicting records of the same property or right in favor of different persons is not possible." The transfer recorded in the 14th entry implied that the 13th entry ceased to have effect, becoming inoperative in its specific function. *Roca Sastre, op. cit.,* Vol. 3, p. 318. The afore-mentioned § 77 has the effect of total extinction and it has been so decided by the General Directorate of Registries of Spain. *Roca Sastre, op. cit.,* Vol. 3, p. 321; decisions of the Directorate of November 22, 1905, January 29, 1941, and May 22, 1943, cited by Roca Sastre.

■■ In view of the foregoing, since the 13th entry was extinguished there was no bar in the registry for its can-

cellation, and there was no need to prove to the Registrar that the Díaz Reyes spouses had been parties to the action brought before the Court of Caguas, as they had no existing rights in the Registry because the latter had been extinguished.[1] The entries in favor of the Díaz Reyes spouses were not inconsistent with the rights of Isidoro Alvarez because they had ceased to exist or to have juridical effect or validity due to their extinction.

This is not a case of previously recorded rights which retain all their force and were not extinguished, as was the case in *Pérez* v. *Registrar, supra,* which dealt with previously recorded attachments, which were not extinguished, nor is it the case of a mortgage right previously recorded, which was still existing in the Registry as in the case decided by the Directorate of Registries of Spain on July 23, 1914, nor is it the case of subsequent rights recorded in the Registry, in full force, as happened in the case decided by the Directorate on July 26, 1916. In all those cases in order to record a judicial order of cancellation it was an essential requirement that the record owners of the rights in question be heard and defeated at the trial in which the order originated. In the case at bar the rights of the Díaz Reyes spouses had been extinguished.

The Registrar's note will be reversed and the cancellation of the 13th entry, the object of this administrative appeal, ordered.

Mr. Justice Marrero did not participate herein.

---

[1] Article 77 of the Mortgage Law refers to extinction as to third parties. But the fact of the conveyance itself entails, with greater significance, the extinction between the interested parties, that is, between Díaz Reyes and Jiménez Solá, independently of third persons. (Morell, *op. cit.*, Vol. 3, p. 372.)